In re HILLSBOROUGH HOLDINGS
CORPORATION, et al., Debtors.

Hillsborough Holdings Corporation,
et al., Plaintiffs,

v.

United States of America, Defendant.

Bankruptcy Nos. 89–9715–8P1 through
89–9746–8P1 and 90–119979P1.
Adversary No. 91–313.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 9, 1997.

Don M. Stichter, Tampa, FL.

James D. O'Donnell, Jacksonville, FL.

Robert L. Welsh, U.S. Dept. of Justice, Washington, DC.

Scott J. Crosby, U.S. Dept. of Justice, Washington, DC.

Dale F. Hart, IRS, Jacksonville, FL.

Douglas F. Frazier, U.S. Attorneys Office, Tampa, FL.

## ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in the above-captioned adversary proceeding is a Motion for Partial Summary Judgment filed by Plaintiffs, Hillsborough Holdings Corporation ("HHC"), *et al.* and the Motion for Summary Judgment filed by the United States of America ("IRS"). On December 9, 1996, the parties filed a stipulation entitled, "Parties' Joint Fact Stipulation Re: Issue Scheduled for Trial on December 9 and 10, 1996" ("Stipulation"), stipulating to the following facts:

Jim Walter Corporation ("JWC"), Plaintiff's predecessor, was incorporated in 1955. Over the years, JWC, through its subsidiaries, grew and expanded through a number of different business ventures, including the acquisition and disposition of numerous other corporations and business lines. JWC and domestic affiliated corporations filed a consolidated federal income tax return for fiscal year ended August 31, 1971 and all years thereafter within the jurisdiction of this Court, through August 31, 1987.

In 1987 and 1988, JWC was involved in a leveraged buyout ("LBO"). The LBO result-

ed in the acquisition of JWC by a group of private investors led by Kolberg Kravitz & Roberts ("KKR"), accomplished through the formation of HHC and its various subsidiaries. In connection with the LBO, certain financing was necessary to meet the required capitalization as set out in a tender offer, which included approximately $3,100,000 in debt and $155,000,000 in equity.

HHC and its successors filed consolidated federal income tax returns for the fiscal year ended May 31, 1988 and all years thereafter within the jurisdiction of the Court. Although there were minor additions and deletions, the same basic group of companies continued to file a consolidated federal income tax return for each fiscal year after May 31, 1988, as reflected by the Internal Revenue Form 851 attached to the consolidated return filed each year. Each member of the affiliated group filing the consolidated return is jointly and severally liable for the tax determined with regard to each return.

JWC incurred certain expenses in connection with the LBO, including:

(1) Preliminary exploratory costs and costs related to the evaluation of four offers as part of its fiduciary duty (which were expensed pursuant to I.R.C. § 162 and are not at issue in the instant dispute);

(2) Costs of securing and placing specific debt used in financing the LBO (which were capitalized and are being amortized over the terms of each piece of specific debt and which are not at issue in the instant dispute); and

(3) Other costs incurred in connection with the LBO which were capitalized as nonamortizable intangible assets. These expenses are the subject of the dispute which is to be decided by this Court in response to the parties' cross-motions for summary judgment and are hereinafter referred to as the "Expenses." The Expenses are as follows:

| Payee | Amount |
| --- | --- |
| Corporate Printing Company, Inc. | $ 54,605 |
| Corporate Printing Company, Inc. | 360,232 |
| Deloitte, Haskins & Sells, CPA | 1,100,000 |
| Deloitte, Haskins & Sells, CPA | 600,000 |
| Foley & Lardner, P.A. | 360,812 |
| Georgeson & Company, Inc. | 95,408 |
| Kolberg, Kravis & Roberts | 20,565 |
| Kolberg, Kravis & Roberts | 7,000,000 |

| Payee | Amount |
| --- | --- |
| Simpson, Thacher & Bartlett | 169,990 |
| Simpson, Thacher & Bartlett | 2,732,600 |
| Simpson, Thacher & Bartlett | 410,841 |
| Securities and Exchange Commission | 487,293 |
| Total: | $13,392,346 |

The Expenses, which were paid by HHC or Walter Industries, Inc. are more fully described and identified as follows:

(a) The amount of $54,605.25 was paid to Corporate Printing Company, Inc. pursuant to Invoice Number 802013 dated February 3, 1988 for various printing, binding, labeling, and distributing of the Letter of Transmittal, Notice of Merger Agreement, Tender Offer Notice, and Notice of Pendency, all of which was related to the Tender Offer. This entire amount was allocated to nonamortizable intangible assets.

(b) The amount of $360,232.10 was paid to Corporate Printing Company, Inc. pursuant to Invoice Number 712034 dated December 9, 1987 for printing and binding of the Tender Offer. This entire amount was allocated to nonamortizable intangible assets.

(c) The amount of $3,200,000 was paid to Deloitte, Haskins & Sells, $1,100,000 of which was allocated to nonamortizable intangible assets, pursuant to a statement dated April 29, 1988 for professional services relating to the formation and structuring of HHC and various subsidiaries and the related merger of JWC with and into Hillsborough Acquisition Corporation.

(d) The amount of $600,000 was paid to Simpson Thacher & Bartlett, as reimbursement for their payment to Deloitte, Haskins & Sells pursuant to a statement dated April 29, 1988 for tax services. This entire amount was allocated to nonamortizable intangible assets.

(e) The amount of $360,811.63 was paid to Foley & Lardner pursuant to a statement dated December 10, 1987 for professional services rendered in connection with the Florida law aspects of the LBO. This entire amount was allocated to nonamortizable intangible assets.

(f) The amount of $95,407.85 was paid to Georgeson & Company, Inc. pursuant to an invoice dated November 23, 1987 for services rendered as information agent for the offer

to purchase the shares of JWC. This entire amount was allocated to nonamortizable intangible assets.

(g) The amount of $1,693,900.42 was paid to KKR pursuant to an invoice dated March 15, 1988, $20,565 of which was allocated to nonamortizable intangible assets.

(h) The amount of $35,000,000 was paid to KKR pursuant to page 28 of a memo indicating a transfer of funds to a KKR bank account, $7,000,000 of which was allocated to nonamortizable intangible assets. The remaining $28,000,000 was capitalized as debt issuance expense.

(i) The amount of $404,346.72 was paid to Simpson, Thacher, pursuant to an invoice dated April 7, 1988, $169,990 of which was allocated to nonamortizable intangible assets.

(j) The amount of $6,500,000 was paid to Simpson, Thacher, pursuant to an invoice dated February 1, 1988, $2,732,600 of which was allocated to nonamortizable intangible assets.

(k) The amount of $448,032.79 was paid to Simpson, Thacher, pursuant to two invoices dated June 16, 1988, $410,841 of which was allocated to nonamortizable intangible assets.

(l) The amount of $487,293 was paid to KKR as part of an invoice dated March 15, 1988 in the amount of $1,593,900.42 (see (g) above) as filing fees required by the Securities and Exchange Commission for the tender offer statement, which was allocated to nonamortizable intangible assets.

On December 27, 1989, the Plaintiffs filed their voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code. On May 14, 1991, Plaintiffs filed the above-styled adversary proceeding, seeking a determination as to the validity, extent and priority of liens with regard to claims filed by the IRS for federal income taxes, penalties, and/or interest alleged to be due and owing. On April 29, 1996, the Plaintiffs filed a Second Amended Complaint which raised the issue under paragraphs 54 through 57 of Count VI, asserting a deduction or write-off of the Expenses, which were previously capitalized as nonamortizable intangible assets in connection with the LBO and such other amounts as may be required to be capitalized either by

agreement of the parties or determination of this Court. The IRS filed an Answer to the Second Amended Complaint, denying the write-off of these expenses. Plaintiffs' Consensual Plan of Reorganization ("Plan") was confirmed on March 2, 1995 and was effective on or about March 17, 1995. Pursuant to the terms of the Plan, the Court retained jurisdiction to resolve the issues presented by this adversary proceeding.

Plaintiffs contend that the critical issues are (1) what did the Plaintiffs buy as a result of the Expenses; and (2) whether Plaintiffs lost the benefit of the Expenses as a consequence of the subsequently filed Chapter 11 cases. In answer to these questions, Plaintiffs contend that the Expenses allowed the parent company to attract the original equity of about $155,000,000 which was used to fund a portion of the acquisition of JWC and provide a basis for the issuance of approximately $3,100,000,000 of debt used to finance the LBO. Plaintiffs contend that the Expenses consist of legal and accounting services and were incurred specifically to shape the corporate structure and to obtain equity holders who were necessary to place the debt. The combination of the resulting equity and debt is the capital structure, the cost of which is the intangible asset which was required to be capitalized by the Plaintiffs for corporate income tax purposes, and is shown on their books as their tax basis in intangible assets.

Plaintiffs contend that what Plaintiffs purchased for their expenditures of $13,392,346 was the capital structure that resulted from the LBO and the positive long-term business attributes connected with that capital structure created in the course of the LBO. Plaintiffs contend that the capital structure created in the course of the LBO was basically as follows: (a) a corporation without public shareholders; (b) one major shareholder, KKR, holding about 91% of the total issued and outstanding stock; (c) a friendly Board of Directors controlled by KKR representatives; (d) Bank debt, revolving credit, and working capital lines, secured with various maturities; (e) Senior notes collateralized with various maturities; and (f) Five classes of bondholders with various interest rates (unsecured) having no equity or equity poten-

tial and no representation on the Board of Directors.

As to whether Plaintiffs lost the benefit of the Expenses as a consequence of the subsequent Chapter 11 cases, Plaintiffs contend that as a result of the Chapter 11 filings on December 27, 1989, all of the debt was accelerated and financing was unavailable to Plaintiffs, except under onerous terms and conditions. Many suppliers and/or vendors required that business be conducted on a different basis. The homebuilding business suffered a significant decline in unit sales due to customer resistance to purchasing from a company in bankruptcy. Management no longer had alternatives to raise capital to operate for growth and expansion. Stockholders rights were suspended and ultimately materially changed under the Plan. As a result of the filing and confirmation of the Plan, substantial changes occurred in the ownership of the corporation and its capital structure.

The IRS contends, and this Court agrees, that the Plaintiffs did not show that the intangible benefits represented by the Expenses related solely to the debt and equity structure portion of the LBO. Rather, a genuine issue of fact remains as to whether the Expenses were incurred to accomplish the LBO. The IRS' position is that each of the amounts comprising the Expenses should be analyzed and considered separately. Further, the IRS argues that the capital structure created by the LBO was not destroyed by the Chapter 11 cases. Rather, none of the debt existing at the time of bankruptcy was ever paid as a result of any acceleration clauses, the debt was restructured pursuant to Article III of the Plan and the creditors received a combination of cash and stock for their claims. Thus, since there was no "liquidation" of the Debtors and only a restructuring, the intangible value of the capital structure was not destroyed.

The initial question for this Court to decide is whether the Expenses which the Plaintiffs originally capitalized and carried on their books as "stock basis expenditures" were really attributable to the Plaintiffs' exploration into restructuring its equity and debt through the mechanics of a leveraged buyout or whether the expenditures were attributable to accomplishing the LBO. The parties

have not stipulated to the exact purpose of each of the expenditures comprising the Expenses and it is impossible for this Court to make this determination from the record. Even assuming for the basis of discussion that the claimed deductions are appropriately deductible expenses, genuine issues of material fact remain. Assuming for the sake of argument that Plaintiffs did in fact experience a loss of the utility of the Expenses, the issue remains as to what year the loss occurred.

Although a loss could have occurred during the pendency of the Chapter 11 cases, this Court is unwilling to accept that the Plaintiffs' capitalization of acquisition costs related to the ultimate consummation of the LBO is a nonamortizable asset which was lost as a result of the filing of the Chapter 11. Plaintiffs' argument that when a debtor files a petition for relief under Chapter 11, the intangible value of the capital structure, specifically the utility of the debt component aspect, is lost, simply does not hold any water. This is because while in theory all of the outstanding debts were accelerated, none whatsoever were paid upon the filing, nor during the pendency of the Chapter 11 cases. In fact, the debts were decelerated as a result of the confirmed Plan and paid only pursuant to Article III of the Plan. The fact that on paper there was an acceleration is of no consequence. Under the Plan, the creditors received a combination of cash and stock and the creditors remained dependent on the success of the Plaintiffs' business.

A clearly recognized purpose of a corporate reorganization is to restructure a debtor's liabilities and that is exactly what occurred here. Plaintiffs' contention that the intangible benefits of the equity structure of the LBO were rendered valueless by the Chapter 11 filings is not supported either by the facts of this case or by law. The mere filing of a petition for relief under Chapter 11 does not alter the equity structure of a corporation. When these cases were filed, no one had any idea what the ultimate plan of reorganization would be and conceivably, KKR could have come up with a capital infusion in order to retain their equity interests. From the Debtors' perspective, therefore, management would have remained the same, although the makeup of the Board of

Directors changed. After confirmation of the Plan, as a matter of corporate law, the reorganized corporation remained the same, although the makeup of the equity and the Board of Directors changed.

Having considered the record and the respective motions and briefs of the parties, this Court is satisfied that genuine issues of material fact remain and the respective motions for summary judgment should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for Partial Summary Judgment be, and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment be, and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that a final evidentiary hearing is hereby scheduled before the undersigned in Courtroom C, 4921 Memorial Highway, Tampa, FL 33634, on July 16 1997, at 9:30 am.